NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3374

EDWARD RANDOLPH TEKELEY,

Petitioner,

v.

GOVERNMENT ACCOUNTABILITY OFFICE,

Respondent.

_____

DECIDED: March 10, 2006

_____

Before MICHEL, <u>Chief Judge</u>, MAYER, and BRYSON, <u>Circuit Judges</u>.

PER CURIAM.

## DECISION

Edward Randolph Tekeley appeals from a decision of the Merit Systems Protection Board, Docket No. DC-0839-05-0059-I-1, affirming a decision of the Office of Personnel Management ("OPM") that denied his request to transfer from the Federal Employees' Retirement System ("FERS") to the Civil Service Retirement System ("CSRS"). We <u>affirm</u>.

BACKGROUND

The Federal Employees' Retirement System Act of 1986, Pub. L. No. 99-335, 100 Stat. 514, created a new retirement system for federal employees. Generally, employees hired after December 31, 1983, are automatically covered by FERS. Certain rehired employees with five years of prior civil service have the option of electing FERS or maintaining CSRS, CSRS-Offset, or Social Security only coverage. Those rehired employees ordinarily have a one-time opportunity to make an election among those options during the first six months of their reemployment. The employing agency must provide those employees with an election form prepared by OPM and must document the employees' receipt of that election form. 5 C.F.R. § 846.203. Other rehired employees (e.g., those without five years of prior civil service) are automatically covered by FERS.

Between 1993 and 2000, 5 C.F.R. § 846.204 provided a few exceptions to the six-month election period rule, allowing rehired employees to make belated elections under certain circumstances. One of those exceptions provided employees a one-time opportunity to correct an agency's administrative mistake that erroneously prevented the employee from being offered the usual election period at the start of his reemployment. As OPM has explained, such a mistake might arise on reemployment, for example, if "the agency did not realize that the employee had 5 years of previous civilian service." Deemed Elections of Coverage Under the Federal Employees Retirement System, 58 Fed. Reg. 47,821, 47,821 (Sept. 13, 1993).

In 2000, Congress enacted the Federal Erroneous Retirement Coverage Corrections Act ("FERCCA"), Pub. L. No. 106-265, Title II, 114 Stat. 762, 770 (codified

at 5 U.S.C. 8331 note).[1]  Just as 5 C.F.R. § 846.204(b)(2) did before 2000, FERCCA provides a limited exception to the six-month election period rule, allowing employees a one-time opportunity to correct an agency's administrative mistake that erroneously prevented the employee from being offered the usual election period at the start of his reemployment.  Section 2133 of FERCCA, however, explicitly provides that an employee who already had an opportunity to correct a particular agency error was not entitled to a second opportunity through the operation of FERCCA.

In January 1990 Mr. Tekeley began working for the Government Accountability Office ("GAO") after having left a previous federal employment position in 1985.[2]  In 1995 he transferred to a position with the Department of Treasury.  In 1996 he transferred back to the GAO, at which time the GAO discovered an error in Mr. Tekeley's retirement coverage.  Although Mr. Tekeley should have been placed in CSRS-Offset and given a six-month period in which to choose retirement coverage when he reentered federal service in 1990, he was instead placed automatically in FERS.  Pursuant to the then-relevant regulation, 5 C.F.R. § 846.204(b)(2)(ii)(A) (1996), the GAO was required to "provide written notice" of the error to Mr. Tekeley, notifying him that he "may, within 60 days after receiving the notice, decline to be deemed to have transferred to FERS."

---

[1]    Section 846.204(b)(2) was substantially changed in 2001 to implement FERCCA.  Corrections of Retirement Coverage Errors Under the Federal Erroneous Retirement Coverage Corrections Act, 66 Fed. Reg. 15,606 (Mar. 19, 2001).  Certain other retirement coverage regulations were also changed during the time period relevant to this case.  When necessary to avoid confusion, this opinion notes the pertinent date of regulatory provisions when referring to those provisions.

05-3374                                      3

The GAO asserts that it sent the required written notification to Mr. Tekeley in 1996, and that a series of communications ensued between the agency and Mr. Tekeley regarding whether Mr. Tekeley wished to decline FERS coverage. In support of that assertion the agency provided a copy of the notification letter, dated November 4, 1996, in which the agency informed Mr. Tekeley of the agency's error and that he had 60 days to decline FERS coverage. Attached to that letter was an election form. The agency also presented affidavits from several OPM and GAO employees. The affidavits describe a series of conversations initiated by Mr. Tekeley after he received the notification letter, in which Mr. Tekeley requested information about his coverage options. The affidavits and supporting documents—including annuity worksheets and a handwritten note prepared by a GAO employee pursuant to conversations with Mr. Tekeley—also show that GAO provided detailed responses to Mr. Tekeley's inquiries about his coverage options. The record also contains a May 6, 1997, letter from GAO, addressed to Mr. Tekeley, which states that, "in order to assist you in making your decision whether to transfer from CSRS-Offset to FERS, you have been provided with a variety of estimated annuity estimates."

Mr. Tekeley maintains that he never received any notification regarding his retirement options in 1996. Instead, he claims that he first learned of the agency error in 2004, when he was deciding whether to retire from the agency under a voluntary early retirement program. At that time, Mr. Tekeley asked the agency to retroactively place him in CSRS-Offset instead of FERS. Although Mr. Tekeley acknowledges that

---

[2] Although there is little evidence in the record regarding Mr. Tekeley's pre-1985 civil service, he asserts, and the GAO does not dispute, that he had at least five

05-3374                                        4

he spoke with OPM and GAO employees during the 1996-1997 timeframe, he asserts that the conversations focused on disability benefits and that he never discussed retirement coverage at that time. In support of his assertion that he never received the letters GAO claims to have sent him, Mr. Tekeley offered statements from the manager of his apartment building that mail can be misdelivered at the building, and from a coworker who did not receive mail allegedly mailed to him by the GAO.

Whether Mr. Tekeley received proper notification in 1996 is the central dispute in this case. The agency determined that Mr. Tekeley had been given an opportunity to decline FERS coverage in 1996, and so denied his request for retroactive transfer to CSRS-Offset in 2004. Mr. Tekeley appealed that decision to the Merit Systems Protection Board. An administrative judge credited the agency's evidence that Mr. Tekeley received notification of the retirement coverage error in 1996 and therefore affirmed the agency's decision. The full board denied Mr. Tekeley's petition for review, and Mr. Tekeley now appeals that final judgment.

## DISCUSSION

Although Mr. Tekeley fashions his appeal through the lens of various regulatory, statutory, constitutional, and equitable arguments, each of those arguments hinges on the question whether he received proper notice in 1996 of the agency's error and of his right to decline FERS coverage. If he received proper notice in 1996, he is not entitled to a second opportunity to correct the retirement coverage error. See FERCCA § 2133; 5 C.F.R. 839.221 (2005); 5 C.F.R. 846.204(b)(2) (1996).

---

years of creditable civil service prior to 1985.

Mr. Tekeley first argues that he did not receive any notification in 1996 of the retirement coverage error or of his right to decline FERS coverage. Mr. Tekeley is correct that the GAO was required to provide him "written notice" of the error, notifying him that he "may, within 60 days after receiving the notice, decline to be deemed to have transferred to FERS." 5 C.F.R. § 846.204(b)(2)(ii)(A) (1996). However, substantial evidence supports the GAO's contention that it provided Mr. Tekeley with the required written notice and that Mr. Tekeley received that notice. The Merit Systems Protection Board credited the agency's evidence, and we see no error in that regard.

Mr. Tekeley next argues that when the agency discovered the retirement coverage error, proper notice of the error required the agency to document his receipt of an election form, pursuant to 5 C.F.R. § 846.203. The GAO does not dispute that the documentation requirements of 5 C.F.R. § 846.203 apply in this case. However, the GAO contends that its failure to document Mr. Tekeley's receipt of the election form was harmless, and therefore that Mr. Tekeley is not entitled to a second opportunity to correct his retirement coverage. We agree. The agency's evidence shows that Mr. Tekeley had actual notice of his election rights in 1996. Therefore, the agency's failure to comply with the documentation requirements of 5 C.F.R. § 846.203 did not prejudice him. Cf. Pipkin v. United States Postal Serv., 951 F.2d 272, 274 (10th Cir. 1991) (although 28 U.S.C. § 2401(b) requires notice to be sent by registered or certified mail, failure to comply with the requirement is excused where the plaintiff receives actual notice, because in such a case the plaintiff "was not prejudiced by the agency's failure to [use] registered or certified mail"); United States ex rel. Moody v. Am. Ins. Co., 835

05-3374                                            6

F.2d 745, 747-48 (10th Cir. 1987) (actual notice of a subcontractor's claim governed by the Miller Act, 40 U.S.C. § 270b, was sufficient even though the subcontractor failed to send notice by registered mail as required by statute); Balkissoon v. Comm'r of Internal Revenue, 995 F.2d 525, 528-29 (4th Cir. 1993) (the purpose of 26 U.S.C. § 6212(a) was accomplished when the taxpayer received actual notice in sufficient time to petition the tax court despite the agency's failure to use registered mail); Boren v. Riddell, 241 F.2d 670, 672-74 (9th Cir. 1957) (same).

Mr. Tekeley also argues that the November 4, 1996, letter notifying him of the retirement coverage error could not have triggered the 60-day election period because the May 6, 1997, letter from GAO—in which GAO provided Mr. Tekeley with information about the ramifications of his two retirement coverage options—shows that his election period was still open well after that 60-day period. That argument, however, has no bearing on whether Mr. Tekeley received proper notification of the retirement coverage error. Under 5 C.F.R. § 846.204(b)(2)(ii)(C) the agency has discretion to extend the 60-day election period. It appears that the agency did so in this case in order to accommodate Mr. Tekeley's requests for information, and that the extension of the election period did not have any adverse consequences for Mr. Tekeley.

In light of the Board's finding that Mr. Tekeley received notice in 1996 of the agency's error and of his right to decline FERS coverage, Mr. Tekeley's claim runs aground on section 2133 of FERCCA.[3] That statute and the corresponding regulation

---

[3]    Contrary to Mr. Tekeley's assertion, this does not constitute retroactive application of FERCCA. Prior to FERCCA, 5 C.F.R. § 846.204(b)(2) provided a limited, one-time exception allowing employees to make a belated election in order to correct erroneous retirement coverage. Thus, prior to FERCCA Mr. Tekeley would have been

make clear that an employee who was given an opportunity to correct a retirement coverage error prior to FERCCA is not entitled to a second opportunity because of the enactment of FERCCA. Section 2133 provides that FERCCA's provision allowing employees to correct a retirement coverage error "shall not apply to individuals who made or were deemed to have made elections similar to those provided in [FERCCA] under regulations prescribed by the Office before the effective date of this title." Section 839.221 of the regulations provides that an employee who had an opportunity to correct a retirement coverage error under section 846.204(b)(2) is not entitled to a second election opportunity under FERCCA. See also Corrections of Retirement Coverage Errors Under the Federal Erroneous Retirement Coverage Corrections Act, 66 Fed. Reg. 15,606, 15,607 (Mar. 19, 2001) ("Those who had the opportunity to elect coverage under OPM's existing regulations at § 846.204(b)(2) may not have another election opportunity based on the same retirement coverage error."). Accordingly, we uphold the Board's decision that Mr. Tekeley was not improperly denied his right to elect a retirement option other than FERS.

---

entitled to a single opportunity to correct the error, but not a second opportunity. Section 2132 of FERCCA was essentially a statutory enactment of the one-time opportunity to correct an error, which was previously afforded by 5 C.F.R. § 846.204(b)(2). Mr. Tekeley's current claim is based on FERCCA, and his argument is that FERCCA affords him an opportunity to correct erroneous retirement coverage. Section 2133, however, has the effect of maintaining the prohibition on second chances, a prohibition that existed prior to the enactment of FERCCA.